Your Honor's counsel my name is Nova Jansen. I'm pleased to represent the appellant Mr. John Abbott in the case before the court today. I would like to reserve two minutes of my time for rebuttal. Mr. Abbott pled guilty to one count of conspiracy to distribute methamphetamine. At sentencing he raised several challenges to the calculation of his advisory guideline sentencing range all of which were overruled. Today I would like to focus on two particular errors that the district court made in calculating the guideline. First the because his 1999 conviction for Iowa domestic assault with intent to inflict serious injury is not a crime of violence within the meaning of section 4B 1.2. And second the district court erred in finding that Mr. Abbott was subject to a three level aggravating role enhancement for being a manager or supervisor pursuant to 3B 1.1. In conjunction these errors raised Mr. Abbott's advisory guideline sentencing range pretty dramatically increasing his offense level from 33 to 36, his criminal history category from a 5 to a 6 and increased the sentencing range from 210 to 262 months to 324 to 405 months. Turning first to the career offender enhancement Iowa domestic assault with intent to inflict serious injury is not a crime of violence because it doesn't satisfy the force clause in the career offender guideline and it also doesn't satisfy the definition of generic aggravated assault. It's overly And an assault under that provision is going to be deemed a domestic assault if it's perpetrated against particular persons, a spouse, a domestic partner, a child, someone living in the same household. And as was the case with Mr. Abbott if the domestic assault is quote committed with the intent to inflict a serious injury upon another the offense is essentially elevated to the level of an aggravated misdemeanor under Iowa code section 708.2 a 2c and that of triggers it as a felony for purposes of the career offender provision. And is that the that the phrase that you're asking us to focus on the serious injury upon another? Yes well yes there's actually two components to that your honor. So first if assault if 708.1 itself satisfies out of the force clause or the aggravated assault clause we don't even need to look because that would of course fulfill the requirements of the career offender guideline. Now my argument in this case is the assault statute does not so then we need to turn to the 708.2 a to determine if in every case that qualifies as a career offender crime of violence. And I would also submit secondarily that that does not meet the definition. Why doesn't serious injury upon another in light of our I know it's unpublished Chapman case why doesn't that do it? Yes your honor so the Chapman decision was looking at aggravated assault. These Iowa statutes all work in a very similar way. You have the base level assault statute and then enhancing. So if we accept for the sake of argument that the base level assault statute isn't sufficient to qualify as a crime of violence then we go to these enhancing penalties. Now in the Chapman case the court did consider this particular serious injury language and of course this court has held in Rice that bodily injury it's relied on the Castleman case to say that you know bodily injury requires force capable of producing that result. But the Iowa statute is very different and the Chapman case did recognize this. Iowa statutes do not require bodily injury they require serious injury and serious injury is defined as bodily injury or a disabling mental illness and that is the key here. But what the Chapman case did is they didn't really evaluate whether that disabling mental illness by itself was sufficient to get us where we need to go. What they said instead is that under Duenas-Alvarez the Mr. Chapman hadn't pointed to a case where Iowa had applied that particular provision in a way that made it clear that they would prosecute an assault in a way that includes an offensive touching that could cause a disabling mental illness. So what would be an example of some of this type of crime that could cause a disabling mental illness that does not use violent force? Sure, your honor. Actually I think this particular case is almost the perfect example in crimes of domestic violence. Now of course the district court judge when she was considering this she didn't undertake a categorical analysis. She just said I'm applying this common sense approach and domestic violence is always a really violent type of crime. And I agree that oftentimes domestic violence is a very violent crime that requires you know there's beatings and terrible things that happen. But just as frequently domestic violence is kind of a mind game sort of thing where you're you're taking steps. So for example to take the the least level under 708.1 and insulting her offensive contact. If I'm a husband trying to terrorize my ex-wife I could certainly be taking all sorts of you know moving towards her in a quick fashion, scaring her, putting her in fear of that offensive touching while trying to cause her some sort of a mental incapacity. I'm going to drive this woman crazy. I'm going to drive my former partner crazy. I'm going to cause her to have a nervous breakdown because I'm going to get in her face every chance that I can get. And so I don't think it's at all implausible that the statute could and should be applied in this particular way. But because we have to apply this categorical approach that's very different from Castleman. This is very different from the cases that require bodily injury. Because under the 2010 Curtis Johnson decision for the force clause in particular we require a level of physical force, strong physical force that is capable of causing physical pain or physical injury. Not mental pain or injury. Are there any other cases that you have found in any other states or circuits where they've analyzed any other state offenses that are similar to this that carve out a separate type of injury that is mental and not physical? I have not found any particular cases and I did undertake a fairly extensive search. I would certainly be happy to supplement should I find something after today's hearing. I do know that the government cited in its brief the Castleman decision which was looking at this Tennessee misdemeanor crime of domestic violence statute. And I just wanted to comment on that really quickly because that statute did discuss impairment of bodily member organ or mental faculty. But again I think that this is what differentiates this case from Rice and Castleman. Is that in Castleman the court was looking at mental distress, mental injury. But we have a clear 2010 Curtis Johnson case on point that for purposes of the force clause it needs to be physical injury, physical problems. And I think that the definition, the generic definition of aggravated assault also has that same problem. Because an assault in the typical generic sense is a violent crime. This is why we're under the ACCA violent felony. We're anticipating some sort of physical conduct. And here the physical conduct required under the Iowa statute is just so minimal that when coupled with that, that the conviction can be had simply by causing someone serious mental distress which is very typical in this type of case. I think it simply doesn't qualify under as a crime of violence and therefore the district court committed a serious error. I'd like to reserve it to the court. Thank you. Mr. Kronk. Please the court, Ms. Janssen. My name is Cliff Kronk and I'm the prosecutor from Iowa that prosecuted this case. First I'd like to say this is a harmless error case. Judge Rose could not have made this more clear when she imposed the sentence in this case. She specifically said that this is not a guideline case. This is a 3553A case and I would impose the same sentence had Mr. Abbott not been a career offender and if I had not found that he had a role enhancement. As I read her statement which you fairly accurately described, it's forceful, it's strong but it doesn't have any follow up explanation as to why the alternative sentence would be the same even if the career offender and the role enhancement didn't apply. Isn't that something of a concern here or can I guess that's my hesitation on this one is there just doesn't seem to be or one hesitation, doesn't seem to be a lot of explanation other than just it's a 3553A analysis. I think that she explained extensively how she viewed Mr. Abbott. She talked about his long criminal history of very serious violent behavior and she characterized it repeatedly about and she clearly had analyzed his life, she looked at his adult behavior, she looked at his behavior in this case. This is a seven pounds of ice case in a few months that Mr. Abbott was getting from Las Vegas and bringing to Iowa. So I think I would characterize that as a thorough explanation of why Mr. Abbott is situated the way he is. Of course we have a pre-sentence report that describes his very violent behavior and his repeated violent behavior. Counsel, she does go on for three or four pages, especially when she compares to the other people. But she ends with, I think it ends with, talking about the other people. They also did not in my memory guideline out as high as this particular defendant did. I'm looking for my notes but they just don't want to work for me. I would also . . . I don't know. What a way to end the . . . we're not using the guidelines. Go ahead. Well, that was in . . . she was asking . . . she was responding to Mr. Abbott's attorney's request to sentence him below those other individuals. And I think that's a fair . . . I mean, she's accurate. If his guidelines are here, they're higher than these two other gentlemen. But she also clearly explained the difference and I can explain the difference. Well, she said those . . . wait, in the same paragraph she said those are non-guideline cases. That's how she starts the paragraph. Exactly. She says they're not . . . and that's good for your other argument but maybe not for the end of this. No, I disagree. I think it's good for . . . because she viewed all three of them as non-guideline cases and felt that Mr. Abbott's criminal history and the way that he should be treated is more serious than the other two defendants. And if you had those two cases, I think you would agree one of them, Mr. Lampe, which is in the record here, was a cooperator. And he's the one who was under the direction of Mr. Abbott. And he's the one who drove the load of two pounds of ice back from Las Vegas under Mr. Herman and Mr. Abbott's direction. Mr. Herman didn't have the criminal history, neither did Mr. Lampe have the very serious violent criminal history that Mr. Abbott had. And the court pointed that out. Counsel, I'm having a problem when you get to the . . . you know, before the harmless error analysis with your argument or the career offender enhancement, you heard opposing counsel come up with one scenario, which is, you know, furtive movements by the spouse towards another spouse creating a disabling mental illness. But I can think of another that's not that outrageous, which is, you know, an unexpected sexual assault, which doesn't require violent force but obviously includes an offensive touching. It seems to me that that would also satisfy the definition of an aggravated assault but not require violent force. So we have at least two circumstances that I can think of that would not require violent force. If you lunge like this or you go like that, what is that, Your Honor? That's a threatened use of physical force. So that satisfies the force requirement. If you overcome the will of a woman, even if she relents, that's violent force. If you molest a child by touching a child's exterior genitalia, that's not pain or injury, but it's certainly violent. Is that violent force? If, you know, if you're sitting in a movie theater and somebody reaches over and touches one of your . . . you know, touches someone else's private parts, would that be violent force under . . . as we know it under the statute? If there's an intent, yes. I would say yes. And, you know, I think now we're looking at Johnson as a panacea for all situations when the Johnson case was about not knowing whether this was an offensive touching or an actual application of force. And Johnson doesn't really work in all scenarios involving violence because it doesn't work with the molestation of a child. A child may not be hurt at all physically. A child would not necessarily resist, and it may not be force in the sense that we think of punching or threatening a use of force to a child. I think it's interesting. You asked for examples, and this example she gave was actually lunging at somebody. That's a threatened use of force. So she can't come up with one, and she cites two In White, the defendant threatened to shoot his wife's knee off and otherwise threatened to do other harm to her, forced her to watch a video, kidnapped her. And although she never suffered bodily injury, the court found that that was a crime under the Iowa law, and that could cause a disabling mental illness. In Thompson, it's a little girl that's sexually molested. He slaps her, he hits her, and she suffers post-traumatic stress disorder. And the Iowa court says that that's sufficient to cause serious injury. So even the examples that they provide to the court on this violence. So your argument is that of the examples that opposing counsel and I've asked you about, those all include violent force. But at the very least, there's no examples of any prosecutions. It's more fanciful, to use the words that we've used in other cases in the Supreme Court to use, as to those circumstances or those hypotheticals. Right. And I would say that swopes and the recent opinion of this court impetus, they ask you to look at that exact thing and see, have the state courts applied this language in an overbroad way? And I think when I say it cannot be seriously argued that a person who assaults someone with the specific intent to cause disabling mental illness could intend to do so without the use of force or the threatened use of force or the attempted use of force. Do you think that the fanciful language in some of our In other words, is it always the burden of a defendant when challenging something like this to come up with specific examples of prosecutions within the state? Or can we just look at the language and say, boy, that's included? I think swopes answers that. And it says that we look at two things. We look at the language of the statute and we look at the state's application of that language to their specific law. Which prevails if we have no prosecutions, but the plain language clearly incorporates particular examples. What do we do with that? I'm not sure, but I do think that disabling mental illness, I can't think of a scenario where you could intend to cause a disabling mental illness without ever threatening any sort of use of force of any kind. What about, as I understand Iowa's general assault statute, there is the word offensive, right? Something that will be insulting or offensive to another. Yes. Hasn't the Iowa, haven't the Iowa courts interpreted that to be just simply that, just an offensive touching, not a... Right. I agree. And I think what makes the difference here is the actual additional intent to cause serious injury. I think that converts the overall assault statute to a more serious crime and that's why it's a crime of violence. Even if it's just the baseline assault is based on an offensive... And I think that's when you get into how you apply that statute in a generic sense and how the state courts apply it. I'd like to make one more point. The guideline range that the proper range is 210 to 262 months. Judge Rose said, okay, assuming there's no career offender, assuming there's no role enhancement, I'm imposing a sentence of 240 months. That's not a variance. That's a presumed to be reasonable sentence. I see my time is... Thank you, counsel. Thank you very much. Ms. Jansen. Thank you, your honors. I'd like to really focus on the harmless error, but I did want to really just quickly address where Mr. Kronk said that a lunge is necessarily a violent force. Let's simplify it even further. A former husband, every time he sees the wife strokes her cheek and based on their history, he knows that that's likely to cause her serious mental effect. I don't think that anyone would characterize stroking somebody's cheek as more than an insulting or offensive behavior. I would point out, Judge Kelly, that in fact, the Iowa Supreme Court has held that a mere offensive touching. That's the Johnson case and that is cited in my brief. A few points I wanted to make about the harmless error issue. I think that the Chapman analysis, whether this is fanciful, I've covered that pretty well in my brief. As far as harmless error goes, I certainly did mention that there is a lot of room for negative collateral consequences. This amendment, there's currently a big question with that 10 to 1 ratio on ice versus methamphetamine mixture that could have some type of a retroactive amendment that Mr. Abbott would therefore not be able to get the benefit of because of this type of error. Second, I want to comment United States versus Gall, of course, has been our guiding principle and this court has repeatedly said that the starting point is the guidelines and this guideline analysis needs to be made. Your Honor's really hit on the point that I wanted to make, which is that on page 30, and this was not in response to something that defense counsel said, the judge had gone on for about three pages of the sentencing transcript at this point where she said, this is a 3553A analysis. However, the other two defendants did not, in my memory, guideline out as high as this particular defendant did. I think what that really does is it demonstrates that in this case, the guidelines were, in fact, the anchor from which she made all of her subsequent decisions. I see that my time is up. Unless Your Honor has further questions, I thank you for your time. Thank you, counsel, for the argument. Case number 17-2932 is submitted for decision.